the provisions of the act is specifically imposed upon, and rests solely with, the principals and other persons in immediate or active charge of the schools; school directors, or health authorities of the district or municipalities are not such other persons: Com. v. Rowe, 218 Pa. 168; Cousins v. School District, 28 Pa. C. C. Rep. 381.

*John D. Meyer*, for appellee, cited: Isenhour v. State, 157 Ind. 517 (62 N. E. Repr. 40); Blue v. Beach, 155 Ind. 121 (56 N. E. Repr. 89); Jacobson v. Massachusetts, 197 U. S. 11 (25 Sup. Ct. Repr. 358).

PER CURIAM, January 3, 1911:

The decree in this case is affirmed at appellants' costs on the opinion of the court below dismissing the exceptions to the findings of fact and conclusions of law of the judge specially presiding.

---

# Bell's Estate.

*Executors and administrators—Administrator d. b. n. c. t. a.—Surcharge—Duty to collect—Entries in account books—Evidence.*

1. An administrator d. b. n. c. t. a. will be surcharged with the amount of a certain cash balance where it appears that from the date of testator's death the assets were practically in his possession and when, therefore, the original administratrix died and letters were granted to him no transfer was necessary; that among the assets was at that time a cash balance on hand on deposit, of the amount in question, subject to his control; and that even if this fund had not in fact been in his possession his own books showed a liability for this amount on the part of the deceased administratrix which it would have been his "proper duty" to have enforced because they were decedent's assets in course of administration.

2. An administrator d. b. n. c. t. a. is properly surcharged with the proceeds of a sale of real estate where such surcharge is based upon entries in books kept by himself and it appears that he had exclusive charge of the testator's business and assets, that he filed no account, and that the only record of the course of his administration was what he voluntarily wrote in the books in question.

Argued Nov. 2, 1910. Appeal, No. 151, Oct. T., 1910, by J. McF. Carpenter and William B. Secrist, executors, from decree of O. C. Allegheny Co., Sept. T., 1908, No. 42, dismissing exceptions to adjudication in Estate of Thompson Bell, deceased. Before BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Exceptions to adjudication.

The facts appear in Bell's Estate (No. 1), 226 Pa. 531, and in the following opinion of HAWKINS, P. J., on rehearing:

The former decree made in this court was reversed on appeal with this suggestion:

"We think the account should be restated so as to show clearly and definitely the assets which actually came into the hands of James M. Bell as administrator d. b. n. c. t. a. of the estate of Thompson Bell, deceased, of which, in the proper discharge of his duty he should have collected."

And turning to the discussion on the opinion it is found that the difficulty arose out of confusion in the evidence relating to two items of surcharge: (1) The balance in the Western Bank; and (2) the proceeds of sale of Stowe township lots.

The attention of this court will therefore be directed especially to these matters.

1. In order to a proper understanding of this question, it is necessary a preliminary statement should be made: Mr. Bell sometimes did business in his own name, sometimes under that of the Western Bank, and sometimes under that of the Western Savings Bank. He had no partner; and accordingly in the settlement of his estate these assumed names were treated as merely formal and the assets in whatever character they appeared, as his assets. He died in 1886, leaving a will in which his niece Mrs. Emma M. Bell, and James M. Bell, were appointed executors, the term of the latter being limited to one year. Mrs. Bell united in taking out letters and in filing accounts; but took no part in the business of administration

even to the extent of drawing a check: James M. Bell, who had been his uncle's bookkeeper and was familiar with his affairs, took up the business of exclusive administration at his uncle's death, and continued until the time of his own death. Books carefully kept by himself show the course of administration. In the investigation here the deposits were eliminated. From the date of Thompson Bell's death until his own, the assets were practically in his possession; and when therefore Mrs. Bell died and letters were granted to him no transfer was necessary. Among these assets there was at that time a cash balance on hand of $2,235.34 on deposit, subject to his control. Even if this fund had not in fact been in his possession, his own books showed a liability for this amount on Mrs. Bell's part which it would have been his "proper duty" to have enforced because they were decedent's assets in course of administration.

2. In 1881, Mr. Bell bought a tract of land in Stowe township, which he subdivided into a plan of lots, and afterwards conveyed the legal title to certain of these lots to Mrs. Bell, for reasons which have not been explained and are not material. When Mrs. Bell died in 1896, the legal title to some of these lots still remained in her, and in 1899 James M. Bell as administrator sold Thompson Bell's equity in them to Mrs. Bell's children for $20,000. This appears in the ledger of the Western Bank in his handwriting on the credit side without date in the account of "Stowe Township lots," page 535 as follows: "Sold to account of E. M. Bell, guardian, $20,000;" and on page 128 debit side of same ledger, "March 30th, 1899, Stowe Township lots 40—$20,000." Corresponding entries appear in books kept by Mr. Bell for Mrs. Bell as guardian of her children, and continued by him after her death known as "E. M. Bell guardian account." These entries are:

"Cr. Cash Book March 30, 1899, Stowe
        township lots ...................$20,000

> Journal March 30, 1899, Stowe town-
> ship lots
> Debtor cash lots in McKees Rocks
> borough.. ....................... 20,000
> Dr. Ledger March 30, 1899, Lots McKees
> Rocks........................ 20,000
> Cr. Ledger
> Cash Account March 30, 1899 ...... 20,000 "

These guardian books show on hand when the entries were made over $31,000—which was reduced to the extent of this $20,000 payment on March 30, 1899. No deed was made by Mr. Bell, although he had power under Thompson Bell's will; Sheets's Estate, 215 Pa. 164; but it is enough that his method of extinguishing the equitable title was approved and ratified by Mrs. Bell's children. Objection is made that this is simply a method of bookkeeping; that it does not appear that a dollar was ever paid by Mrs. Bell's children to James M. Bell. Aside from the significance of these entries, it is answered that there is no reason why Mrs. Bell's children should be given this credit; they are not the only parties interested in the fund under Thompson Bell's will; and that James M. Bell who was acting executor under Mrs. Bell credited Mrs. Bell's children with payment of this purchase money as above shown. The suggestion of lack of evidence that Mr. Bell received any purchase money has no merit. His own entries show he made a sale and received the proceeds. There could have been no occasion for these entries unless this was true. Good bookkeeping might have required formal debit and credit of this equitable title as being an unadministered asset on hand if that had been the fact, but the entry of consummated sale was an averment that this was an administered asset ready for distribution. The moving finger writes and having writ moves on; and nothing can change a line or blot out a word of it.

It will thus be seen that the basis of these items of

surcharge is the books kept by Mr. Bell himself.  He had exclusive charge of the business and the assets; and the only record of the course of his administration is what he voluntarily wrote in them.  He filed no account and exceptants were therefore forced to rely upon these books as representing the facts.

The court therefore finds that exhibit No. 1, attached hereto and made part hereof, shows definitely and clearly the assets which accountant actually, or ought to have, received.

It was suggested at the hearing that inasmuch as these accountants inadvertently omitted to claim compensation in the account filed, allowance should be made for Mr. Bell's services.  The question does not appear to be within the scope of the matter submitted; but this court suggests in the interest of justice that the services rendered by Mr. Bell are deserving of recognition.  His failure to file an account has, to say the least, increased the expenses of settlement; but in view of the fact that he has rendered valuable services extending over a long period and seems to have kept accurate books, there would seem to be a balance of compensation due him.

The accountants have charged themselves with $46,477.89, and the court surcharges them with $79,541.81, making a total of $126,019.70, which may serve as a basis on which commissions may be calculated if the Supreme Court sees fit to make an allowance.  Exceptant's counsel contends that Mr. Bell was fully compensated in Mrs. Bell's lifetime, but it does not appear that he was compensated for services rendered as administrator.

Exceptions to the adjudications were dismissed.

*Error assigned* was in dismissing exceptions to adjudication.

*J. McF. Carpenter*, with him *George N. Chalfant* and *William B. Secrist*, for appellants.

*W. K. Shiras*, with him *C. C. Dickey*, for appellee.

Per Curiam, January 3, 1911:

The decree in this case is affirmed at appellant's costs on the statement of the learned president judge of the court below on the rehearing.

---

## Kunzman v. Pittsburg Railways Company, Appellant.

*Negligence—Street railways—Evidence—Rebuttal.*

In an action against a street railway company to recover damages for personal injuries, where several witnesses for the defendant, after testifying that they saw the plaintiff run towards a car and attempt to get on when it was in motion, are confronted with another person in court, and they assert he was not the man, such person may be called in rebuttal to testify that he remembered the accident, and that it was he who had run towards the car while it was in motion.

Argued Nov. 2, 1910. Appeal, No. 134, Oct. T., 1910, by defendant, from judgment of C. P. No. 4, Allegheny County, First T., 1908, No. 106, on verdict for plaintiff in case of John P. Kunzman v. Pittsburg Railways Company. Before BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Trespass for personal injuries. Before SWEARINGEN, P. J.

The opinion of the Supreme Court states the case.

Verdict for plaintiff for $4,350 and judgment thereon. Defendant appealed.

*Error assigned* among others was the admission of the testimony of H. J. Williamson in rebuttal.

*Craig Smith,* with him *Clarence Burleigh* and *William A. Challener,* for appellant.

*L. K. Porter,* with him *S. G. Porter,* for appellee.